IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NICOLE M.,[1]                                )
                                             )
              Plaintiff,                     )
                                             )
        v.                                   )        Civil No. 3:19-cv-437–HEH
                                             )
ANDREW M. SAUL,[2]                           )
Commissioner of Social Security,             )
                                             )
              Defendant.                     )

## MEMORANDUM OPINION
(Cross-Motions for Summary Judgment)

On September 6, 2017, Nicole M. ("Plaintiff") applied for Social Security

Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social

Security Act ("Act"), claiming disability from myriad impairments, with an alleged onset

date of August 30, 2017. The Social Security Administration ("SSA") denied Plaintiff's

claims initially on October 18, 2017, and again upon reconsideration on March 14, 2018.

At Plaintiff's written request, an Administrative Law Judge ("ALJ") held a hearing on

December 28, 2018. Thereafter, the ALJ denied Plaintiff's claims in a written decision

on February 28, 2019, concluding that Plaintiff did not qualify as disabled under the Act

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of
the United States has recommended that, due to significant privacy concerns in social security
cases, federal courts should refer to claimants by only their first names and last initials.

[2] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six (6) year term as
the Commissioner of Social Security. Accordingly, Commissioner Saul will be named as the
Defendant in this matter.

because Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  On April 16, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to review by this Court.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in (1) rendering "an improper conclusion" with respect to whether Plaintiff met or equaled Listing 1.04(A), and in (2) failing to make a conclusion supported by substantial evidence.  (Pl.'s Mem. Supp. Mot. Summ. J. [hereinafter Pl.'s Mem.] at 8, ECF No. 12.)  This matter comes before the Court on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3]  For the reasons that follow, the Court finds that the ALJ did not err in finding Plaintiff ineligible for Listing 1.04(A) and that the ALJ's analysis was supported by substantial evidence.  Accordingly, Plaintiff's Motion for Summary Judgment will be denied (ECF No. 11), Defendant's Motion for Summary Judgment will be granted (ECF No. 13), and the final decision of the Commissioner will be affirmed.

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers, such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (unpublished) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or

if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether a disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634–35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

On December 28, 2018, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (R. at 63–110.) On February 28, 2019, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 14–28.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 16–28.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 30, 2017, the alleged onset date. (R. at 16.) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, osteoarthritis of the right foot, right Achilles tendonitis (with a healed tear), post-traumatic stress disorder, depression, anxiety/obsessive compulsive disorder, an impulse control disorder, and a substance abuse disorder. (R. at 16–17.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work, except that Plaintiff can stand and walk for four hours in an eight-hour day; sit for six hours in an eight-hour day; frequently use ramps and stairs; frequently balance; and occasionally kneel, crouch, crawl, and stoop. (R. at 19.) The ALJ further found that Plaintiff must be allowed to alternate between sitting and standing at will, be off-task ten percent of the workday—in addition to normal breaks, miss one day of scheduled work every two months on an unscheduled basis, and use a cane, held in Plaintiff's dominant hand, to ambulate. (R. at 19.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as a management analyst and an operations manager. (R. at 26.) However, at step five, the ALJ determined that Plaintiff could perform jobs

5

existing in significant numbers in the national economy. (R. at 27.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 28.)

Plaintiff's appeal to this Court alleges that the ALJ erred in (1) finding that Plaintiff did not meet Listing 1.04(A); and in (2) failing to make a conclusion supported by substantial evidence. (Pl.'s Mem. at 8.) Plaintiff claims that the ALJ made only conclusory statements in her opinion, without a narrative discussion that cited medical and non-medical evidence supporting each conclusion regarding Listing 1.04(A). (*Id.* at 11.) Plaintiff also claims that the ALJ failed to give adequate weight to the records that support a finding that she met Listing 1.04(A). (*Id.* at 13.) Defendant responds that Plaintiff bears the burden of proving the satisfaction of Listing 1.04(A), and that she failed to establish enough evidence to meet its requirements. (Def.'s Mot. at 3.) Because "a[n] administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision," *see Clarke*, 843 F.2d at 272–73, the Court reiterates that it cannot and should not reweigh the evidence. Instead, the Court will consider only whether substantial evidence supports the ALJ's step-three conclusions.

Plaintiff bears the burden of proving that she meets or equals a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary" and, consequently, require an exacting standard of proof. *Sullivan v. Zebley*, 493 U.S. 521, 532–33 (1990). "For a [plaintiff] to show that [her] impairment matches a listing, it must meet all of the

6

specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530.

Plaintiff's condition must satisfy all of the enumerated criteria in Listing 1.04(A) to qualify her as disabled at step three. *Id.* Specifically, to meet the requirements of Listing 1.04(A), Plaintiff must establish that she had a spinal disorder resulting in the compromise of a nerve root or the spinal cord, with

> evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04(A). The ALJ found that the record evidence did not satisfy these requirements. (R. at 17.)

When reviewing evidence for a claim, the ALJ may exercise discretion as "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision." *See Reid v. Comm'r Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)). Evidence analyzed in subsequent steps of the sequential evaluation process, read as a whole, provides substantial evidence to support an evaluation of Listing criteria at step three. *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (unpublished); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005) (holding that findings at other steps of the sequential evaluation may provide a basis for upholding a step three finding). Further, the ALJ's opinion as a whole may provide a basis for upholding the ALJ's

7

determination for Listing criteria in step three. *Johnson v. Berryhill*, No. 2:18cv277, 2019 WL 3034700, at *50 (E.D. Va. June 10, 2019).

In this case, the evidence in the record substantially supports the ALJ's finding that Plaintiff did not meet or equal Listing 1.04(A). Although the ALJ did not discuss specific evidence within step three, there was no requirement for her to do so given the opinion as a whole. *See Johnson*, 2019 WL 3034700, at *50. The ALJ's analysis of the record in step four contains an extensive review of both the objective medical evidence and Plaintiff's reports of symptoms to medical providers. (R. at 20–26.) For example, the ALJ explained that an X-Ray image taken just a few days prior to Plaintiff's alleged onset date revealed only minimal joint space narrowing as well as minimal osteoarthritis. (R. at 20, 465.) The ALJ relayed that Plaintiff's primary care physician then noted that Plaintiff had a normal gait and no acute distress, although the physician did prescribe medication to treat her lower back pain and tendonitis. (R. at 20, 448.) She further considered that, at a subsequent exam, Plaintiff had an antalgic gait and a positive straight leg raise test, but tested 5/5 or 5-/5 strength[4] in all areas tested and did not use an assistive device to ambulate. (R. at 21, 492–93.) Finally, the ALJ explained that, on October 10, 2018, Plaintiff, who ambulated with a single point cane, consulted occupational therapy for mobility assistance. (R. at 23, 861.) The ALJ found particularly

---

[4] It appears that healthcare providers rate a patient's strength in multiple areas of movement using a 0 to 5 scale, with 0 indicating no movement and 5 indicating normal strength. Ratings may be further subdivided using "–" and "+" to indicate smaller differences in strength. *See* Strength of Individual Muscle Groups, *Neuroanatomy Through Clinical Cases* (Aug. 12, 2020), http://www.neuroexam.com/neuroexam/content29.html.

important the fact that the provider turned down Plaintiff's request for a powered scooter and recommended additional rehabilitation and evaluation for a manual wheelchair, which Plaintiff refused.[5] (R. at 23, 862.)

Although some specific evidence may support Plaintiff's claim that she met Listing 1.04(A), the record as a whole does not rise to that standard. *See Breeden*, 493 F.2d at 1007 (holding that the Court "must review the entire record" and take into account "whatever in the record fairly detracts from [the] weight" of the ALJ's decision). For example, on June 20, 2015, Plaintiff underwent magnetic resonance imaging for left sided lumbar radiculopathy, the report for which included a note indicating "possible impingement on the descending right S1 nerve root." (R. at 613–14.) While this note tends to support a portion of Listing 1.04(A), there is no evidence of follow-up treatment in response to this finding nor consistent evidence supporting the remaining portions of the Listing. *See Zebley*, 493 U.S. at 532. Plaintiff consistently had full to near full strength, intact sensation, and normal reflexes. (R. at 493, 508, 700–01, 758, 761.) While some straight-leg tests were positive, none were documented in the supine position, and many tests were negative. (R. at 493, 561, 844.) Although a later report— Plaintiff's Functional Capacity Evaluation—indicated notable weakness and antalgia in her left lower extremities, the report included evidence that Plaintiff gave less than her full effort during testing. (R. at 645–46.) The same report included recommendations for

---

[5] *Compare* R. at 23, 862, *with Bonvillain v. Berryhill*, No. 1:19-cv-978, 2019 U.S. Dist. LEXIS 43004, at *31–32 (E.D. Va. Mar 15, 2019) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00(B)(2)(b)(1)) (finding the inability to "walk without the use of a walker, two crutches or two canes . . ." constitutes ineffective ambulation).

a kinesiotherapy outpatient evaluation and aquatics therapy, but not for higher-level interventions, such as surgery. (R. at 651.)

Further, the ALJ indicated that she carefully considered the entire record. (R. at 16.) In determining the validity of specific evidence to support her findings, the ALJ assigned varying weights to the evidence in accordance with its consistency with the rest of the record. Where the ALJ indicates that she considered the whole record, the Court takes her at her word absent evidence to the contrary. *See Reid*, 769 F.3d at 865. Because there is no rigid requirement that the ALJ refer to every piece of evidence, and since her factual findings are supported by this evidence, the Court defers to the ALJ's assessment of the evidence, and it finds that the ALJ's determination that Plaintiff did not meet or equal Listing 1.04(A) was reasonably considered. *See Mascio*, 780 F.3d at 634; *Reid*, 769 F.3d at 865.

Plaintiff also argues that the ALJ erred by making conclusive statements regarding Plaintiff's subjective testimony without an analysis of her credibility.[6] (Pl.'s Mem. at 8.) Plaintiff claims that the ALJ did not identify particular testimony or claims of pain as not credible. (*Id.* at 13.) Plaintiff further claims that the ALJ ignored Plaintiff's repeated statements that she was in pain—which are contained in the medical records—stating that those claims were not corroborated in the medical records. (*Id.* at 13.) Defendant responds that the ALJ properly found that Plaintiff's testimony was inconsistent with

---

[6] It is unclear to the Court whether Plaintiff raised this issue independently on appeal, but as Defendant addressed the issue in its brief, *see* Def.'s Mot. at 19–22, the Court will do so briefly as well out of an abundance of caution.

Plaintiff's own statements, as well as with the objective medical findings in the record. (Def.'s Mot. at 21.)

Where "a reasonable mind might agree that the conservative nature of [Plaintiff's] treatment is an adequate basis to support the ALJ's conclusion that [Plaintiff's] testimony of her disabling condition was incredible," the ALJ may consider such treatment in determining disability. *Dunn*, 607 F. App'x at 273. The ALJ's determination of credibility is "to be given great weight" based on her direct observation of the demeanor of a plaintiff. *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). The ALJ has discretion to weigh a plaintiff's complaints against the medical evidence. *Craig*, 76 F.3d at 594–95. Claims inconsistent with the evidence, including the extent to which the underlying impairment may be expected to cause the symptoms alleged, need not be accepted. *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (citing *Craig*, 76 F.3d at 595). *But see* SSR 16-3P, 2016 WL 1119029, at \*8–10 (Mar. 16, 2016) (stating that the ALJ must explain whether a plaintiff's statements about her symptoms are supported by or consistent with the objective medical and non-medical evidence in the record). Factual findings based on a credibility determination should be accepted by the reviewing court unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (citing *NLRB v. McCullough Envtl. Servs.*, 5 F.3d 923, 928 (5th Cir. 1993)). Generally, the court's inquiry "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

The ALJ found that Plaintiff's allegations of pain were not consistent with the medical and non-medical evidence in the record. (R. at 24.) As mentioned *supra*, she referenced multiple instances in the record that were inconsistent with Plaintiff's testimony, such as medical imaging that showed a lack of injury, multiple observations of normal gait with and without the use of assistive devices, lack of a recommendation for surgery, and statements by Plaintiff discounting her own pain on multiple occasions. (R. at 24–25, 433, 548, 465, 492, 507, 757, 761.) The ALJ also examined the record as it pertained to Plaintiff's alleged mental afflictions, finding evidence of normal functioning despite her identified impairments. (R. at 25, 781–84, 793–96.)

Taken as a whole, the record provides substantial evidence supporting the ALJ's determination to afford Plaintiff's testimony limited weight. (R. at 25.) Contrary to Plaintiff's testimony, multiple medical observations throughout the record reflect full or near full motor strength and reflexes with intact sensation. (R. at 493, 508, 700–01, 758, 761.) Plaintiff did not consistently ambulate with a cane or other assistive devices. (R. at 492, 507, 757, 761.) Although it was sometimes antalgic and involved the use of a CAM boot[7], Plaintiff's gait was often normal, and she was advised to wean off the CAM boot in favor of an ankle brace. (R. at 548, 761.) Imaging on June 15, 2018, showed minimal posterior osteophytes at the L5-S1 level and no acute lumbar fracture or subluxation. (R. at 977.) The ALJ also took notice that all of Plaintiff's

---

[7] The Court understands that a CAM boot is a "controlled ankle movement" brace that allows a patient with intensive injuries to walk. *See* AliMed, *CAM Walker Boots* (August 5, 2020), https://www.alimed.com/cam-walker-boots/.

treatments were conservative—Plaintiff was prescribed medications, physical therapy, orthotics, and injections, without any recommendation for surgery. (R. at 23–25.) Thus, the medical record lacks support for Plaintiff's allegations regarding the extent of her impairments. *See Dunn*, 607 F. App'x at 273. The ALJ properly used her discretion in weighing Plaintiff's testimony against the objective medical and non-medical evidence, *see Edelco*, 132 F.3d at 1011, and this Court defers to the ALJ as the factfinder, *see Biestek*, 139 S. Ct. at 1157. Accordingly, as the ALJ's consideration of Plaintiff's testimony was supported by substantial evidence, this Court finds that the ALJ did not err.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment will be denied (ECF No. 11), Defendant's Motion for Summary Judgment will be granted (ECF No. 13), and the final decision of the Commissioner will be affirmed.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Aug 14 2020
Richmond, Virginia

13